IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TYRELL D'ANTONIO SUMLING,            )
                                     )
        Plaintiff,                   )
                                     )
   vs.                               )   Case No. 14 C 3794
                                     )
VILLAGE OF EAST DUNDEE and           )
DANIEL DUDA,                         )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tyrell D'Antonio Sumling has sued the Village of East Dundee and Daniel Duda, an officer in the East Dundee Police Department. Sumling asserts a due process claim under 42 U.S.C. § 1983.[1] Defendants have moved to dismiss this claim. For the reasons stated below, the Court denies their motion.

## Background

For purposes of the motion to dismiss, the Court accepts as true the following facts alleged in the complaint. On June 19, 2012, an incident occurred involving Sumling and his girlfriend, Kimberly Griffith. Few details about this incident are alleged in the complaint, save for "Griffith then went to Sherman Hospital in Elgin, Illinois." Compl. ¶ 7.

---

[1] In July 2015, the Court granted Sumling to leave to amend his complaint to add a malicious prosecution claim. Sumling did so in a fourth amended complaint that he filed in August 2015. The present motion to dismiss the due process claim preceded that filing. Defendants adopted the motion in responding to the fourth amended complaint.

The following day, Officer Daniel Duda met with Griffith at the hospital. After the meeting, Duda prepared a report. Among other things, the report said that Griffith was told that she had miscarried after the June 19 incident. Duda's report did not indicate that he had spoken with any medical professionals at the hospital about the miscarriage or anything else.

Sumling alleges that Duda later communicated with the Kane County's State's Attorney's Office. He claims that Duda falsely told the state's attorney that he had spoken with a medical professional directly and that this medical professional informed him that Sumling had caused Griffith to miscarry.

In July 2012, the state's attorney filed three charges against Sumling: aggravated domestic battery; aggravated battery to a child under age 13; and involuntary manslaughter of an unborn child. Bond was set at $300,000. Sumling alleges that Duda's fabricated evidence caused the state's attorney to seek these charges.

In September 2012, the state's attorney sought an indictment from a grand jury. The proposed indictment included the earlier charges of aggravated domestic battery and involuntary manslaughter of an unborn child, but it also included a more serious charge related to Griffith's miscarriage, specifically, intentional homicide of an unborn child. Sumling alleges that Duda falsely testified before the grand jury about speaking with a medical professional. The grand jury indicted Sumling on the requested charges. Due to the new charge, his bond was raised to $750,000. Sumling was unable to post bond in this amount and, as a result, spent fourteen months in pretrial incarceration.

In October 2013, Sumling moved to dismiss the intentional homicide counts on

2

the ground that Duda had falsely testified before the grand jury. The court granted this motion. A grand jury later reindicted Sumling on the intentional homicide charge, but prosecutors dropped this charge after Sumling pled guilty to the battery charge. Sumling was sentenced to five years in prison.

In August 2014, Sumling sued the Village of East Dundee and Officer Duda. He alleged that Duda fabricated evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. Defendants have moved to dismiss this claim.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), Sumling must provide "enough facts to state a claim to relief that is viable on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which in turn means that he must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts Sumling's allegations as true and draws reasonable inferences in his favor. *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014).

Sumling argues that defendants violated the Due Process Clause of the Fifth and Fourteenth Amendments by fabricating evidence against him. Specifically, he alleges that Duda lied to the state's attorney and the grand jury about speaking with a medical professional regarding the cause of Griffith's miscarriage.

For a time, it was believed that fabrication of evidence did not give rise to a cognizable due process claim in the Seventh Circuit. *See, e.g., Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015) (noting that past Seventh Circuit decisions "may have rendered the law in this area uncertain"); *Bianchi v. McQueen*, No. 12 C 364, 2014 WL

3

700628, at *9 (N.D. Ill. Feb. 24, 2014) ("Until recently, it seemed to be settled law in the Seventh Circuit that allegations of evidence fabrication do not state a cognizable due process claim."); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 926 (N.D. Ill. 2013) ("This opinion need not discuss the evidentiary support for [the plaintiff's] claim of evidence fabrication because that theory is not cognizable in this Circuit."). More recently, however, the Seventh Circuit has put that view to rest. As the law now stands in the Seventh Circuit, "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Saunders–El*, 778 F.3d at 560 (observing that if "a police officer . . . manufactures false evidence" and "that evidence is later used to deprive [a person] of [his] liberty in some way," that person may bring a due process claim under section 1983).

That is not to say that "every act of evidence fabrication offends one's due process rights." *Saunders–El*, 778 F.3d at 560. To sustain a due process claim based on fabricated evidence, the plaintiff must have been deprived of his liberty in some way. *Id.* at 560-61. In *Saunders-El*, the plaintiff had been "released on bond following his arrest and acquitted at trial." *Id.* at 561. Under these circumstances, the Seventh Circuit held, the plaintiff could not "make out an evidence fabrication-based due process violation" because "the only liberty deprivation . . . stem[med] from [the] initial arrest." *Id.* at 561. The "burden of appearing in court and attending trial" did not constitute a liberty deprivation either, the Seventh Circuit added, because "[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process

4

of law, when the purpose of the trial is to effectuate due process." *Id.*

Unlike the plaintiff in *Saunders-El*, Sumling alleges that based on Duda's fabrication of evidence against him, he was unable to post bond and spent fourteen months in pretrial detention. Defendants argue, however, that "[a] criminal defendant's due process right is only violated if [ ] fabricated evidence secures a wrongful conviction." Defs.' Mem. in Supp. of Mot. to Dismiss at 3. Thus, defendants contend, "the fact that Sumling was incarcerated for a period of time on the alleged trumped up charges" cannot support a due process claim because those charges were ultimately dropped. *Id.* at 4-5.

The Court disagrees. The Seventh Circuit has held that due process claims encompass both pretrial and post-trial deprivations of liberty, as seen most recently in *Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015). In *Armstrong*, the plaintiff alleged that the defendants violated his due process rights by destroying exculpatory evidence on two separate occasions. First, the plaintiff alleged that the prosecutor had destroyed exculpatory evidence before his trial in 1981. *Id.* at 532. As a result of this conduct, the plaintiff claimed, he was imprisoned until 2005, when the Wisconsin Supreme Court vacated his conviction and ordered a new trial. *Id.* at 531-32. Second, the plaintiff alleged that after the supreme court ordered a new trial, "two state lab technicians . . . deliberately violated a state court order to preserve evidence by destroying an exculpatory DNA sample in 2006." *Id.* at 532. Because of this conduct, he remained in prison until 2009, when "a Wisconsin state judge dismissed the charges entirely because the prosecution had destroyed key exculpatory evidence, rendering a fair trial impossible." *Id.* at 531.

With regard to the state lab technicians, the defendants in *Armstrong* argued that the plaintiff's due process claim was based on "a due process right to a fair trial, so the fact that he was not retried on remand defeat[ed] his claim." *Id.* at 551. The Seventh Circuit flatly rejected this argument, observing that the state lab technicians' "actions caused [the plaintiff] to suffer a deprivation of liberty . . . as he languished in prison for three more years . . . after the last [DNA] sample had been destroyed." *Id.* at 552. Thus, the Seventh Circuit held, even though "the most common liberty deprivation cases are based on post-trial incarceration after a wrongful conviction, the essential elements of this constitutional claim are more general and not limited to wrongful convictions." *Id.* at 551; *see also id.* at 552 ("[T]his case illustrates why the [due process claim] should not be limited to its most common version by a too-narrow requirement that the accused have been tried and convicted."); *id.* at 555 (distinguishing other cases on the ground that "[n]one concerned a pretrial deprivation of liberty"); *id.* at 557 (Flaum, J., concurring in part and dissenting in part) ("I join the majority's conclusion regarding the viability of [the plaintiff's] claims against [the state lab technicians] . . . .").

Defendants acknowledge that, like the plaintiff in *Armstrong*, Sumling suffered a pretrial deprivation of liberty. They argue, however, that the Seventh Circuit's "due process analysis in *Armstrong*" was "unique to cases involving destruction of exculpatory evidence." Defs.' Reply in Supp. of Mot. to Dismiss at 3.

Defendants read *Armstrong* too narrowly. The court in *Armstrong* did not distinguish between due process claims based on destruction of exculpatory evidence and due process claims based on fabrication of evidence. To the contrary, in

6

concluding that pretrial liberty deprivations are actionable, the court cited two cases involving fabricated evidence. See *Armstrong*, 786 F.3d at 551 (citing *Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014), and *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)); see also *Saunders–El*, 778 F.3d at 561 (citing *Zahrey* and distinguishing acquittal without pretrial incarceration from acquittal with pretrial incarceration); *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (same).

Defendants point to *Lofton v. Eberle*, No. 14 C 898, 2015 WL 507472 (N.D. Ill. Feb. 5, 2015). Interpreting Seventh Circuit case law on this question, the judge in *Lofton* concluded that "a section 1983 plaintiff may state a due process claim based on the fabrication of evidence only when the fabricated evidence is used at trial and he or she is subsequently convicted." *Id.* at *3. But *Lofton* was decided three months before *Armstrong*, where the Seventh Circuit clarified that due process claims "should not be limited . . . by a too-narrow requirement that the accused have been tried and convicted." *Armstrong v. Daily*, 786 F.3d at 552. *Lofton* thus does not represent current law in this circuit.[2]

Defendants also contend that Sumling actually alleges "a malicious prosecution claim under state law" and that "allegations that sound in malicious prosecution must be brought pursuant to state law." Defs.' Mem. in Supp. of Mot. to Dismiss at 5. Among the cases defendants cite for this proposition are *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010), *Brooks v. City of Chicago*, 564 F. 3d 830 (7th Cir. 2009), and *Newsome v.*

---

[2] Defendants also rely on *Bianchi v. McQueen*, No. 12-CV-00364, 2014 WL 700628 (N.D. Ill. Feb. 24, 2014). In that case, however, none of the plaintiffs suffered a liberty deprivation; they were all released on bond and acquitted. *See* Oral Argument at 02:01, *Bianchi v. McQueen*, 14-1635 (7th Cir. Apr. 16, 2015); *Bianchi*, 2014 WL 700628, at *12; Def. McQueen's Mem. in Supp. of Mot. to Dismiss at 17. *Bianchi* is therefore inapposite.

*McCabe*, 256 F. 3d 747 (7th Cir. 2001). In *Saunders-El*, however, the Seventh Circuit addressed *Fox*, *Brooks*, and *Newsome*, cautioning that these three cases should not be read to broadly foreclose due process claims based on fabricated evidence. *Saunders-El*, 778 F.3d at 559-60. Here, Sumling alleges that Duda's fabricated evidence not only caused a malicious prosecution but also caused him to be deprived of liberty without due process. Thus, Sumling's allegations sound in both due process and malicious prosecution.

Defendants note that the plaintiff in *Fox* spent eight months in pretrial detention before the charges against him were dismissed. The court nevertheless held that the plaintiff's due process claim "consist[ed] of nothing more than a hybrid of his Fourth Amendment false arrest and state law malicious prosecution claims, and accordingly, the due process claim is barred." *Fox*, 600 F.3d at 841. Because the court held that the due process claim was barred despite the plaintiff's pretrial liberty deprivation, *Fox* is arguably in tension with the Seventh Circuit's more recent due process jurisprudence. Unlike the court in *Armstrong*, however, the court in *Fox* did not squarely address whether due process claims extend to pretrial liberty deprivations. Instead, the court based its decision on the fact that the plaintiff had made malicious prosecution and Fourth Amendment allegations under the guise of a due process claim. Thus, as the Seventh Circuit later explained, *Fox* "merely establish[es] that allegations that sound in malicious prosecution must be brought pursuant to state law." *Saunders-El*, 778 F.3d at 560. Accordingly, to the extent that *Fox* "may have rendered the law in this area uncertain," the Court will heed the Seventh Circuit's guidance in *Saunders-El* and apply its "more recent decisions" that address this question "explicit[ly]." *Id.* Even if *Fox* is

susceptible to defendants' reading, the Court concludes that the Seventh Circuit's more recent decision in *Armstrong*—in which the court expressly held that due process claims encompass pretrial liberty deprivations—controls.

Lastly, defendants argue that even if Duda had not fabricated evidence, Sumling would have been arrested and detained on the aggravated domestic battery charge. The evidence may ultimately show this, but defendants' argument does not find a basis in any allegations in the complaint. The argument therefore involves issues that cannot appropriately be addressed on a motion to dismiss for failure to state a claim. *Wilson v. Price*, 624 F.3d 389, 392 n.1 (7th Cir. 2010) ("[W]e only consider those allegations made within the four corners of the complaint."); *Ameritech Corp. v. McCann*, 297 F.3d 582, 588-89 (7th Cir. 2002) (issues of material fact may not be resolved on a motion to dismiss). Because Sumling has adequately alleged that the fabricated evidence caused the liberty deprivation, he states a viable due process claim.

In their reply, defendants note that Sumling "was sentenced to five years in prison receiving credit for time served from the date of his arrest, October 1, 2012 through the date of the entered plea." Defs.' Reply in Supp. of Mot. to Dismiss at 7. Thus, they argue, Sumling "was being detained anyway for the domestic aggravated battery as of October 1, 2012." *Id.* This argument, however, was not raised in defendants' opening brief. (Indeed, neither Sumling's guilty plea nor the five-year sentence was mentioned in that brief.) Defendants have thus forfeited the point for purposes of their motion to dismiss. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014). ("[A]rguments raised for the first time in a reply brief are waived."). Additionally, even if Sumling ultimately cannot prove that he is entitled to compensatory damages (because

the liberty deprivation ended up being counted as time served), he may still be entitled to nominal damages. See *Bridewell v. Eberle*, 730 F.3d 672, 681 (7th Cir. 2013) (Wood, J., concurring) (plaintiff who suffers due process violation may be entitled to nominal damages for "time spent in custody that was credited to a lawful sentence"); *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir. 1994) ("[F]ailure to use the procedures the due process clause requires may lead to an award of nominal damages, even if a properly conducted hearing would have come out the same way."); *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990) (where fabricated evidence does not cause injury, award of nominal damages is still appropriate).

## Conclusion

For the foregoing reasons, the Court denies defendants' motion to dismiss [dkt. no. 56].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 18, 2015

10